UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CR-0231-JRS-DLP |
| | ) | |
| JESS NEAL, | ) | |
| | ) | -03 |
| Defendant. | ) | |

### PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT

The United States of America, by counsel, John E. Childress, Acting United States Attorney for the Southern District of Indiana, and, Tiffany J. Preston, Assistant United States Attorney ("the Government"), and the defendant, JESS NEAL ("the defendant"), in person and by counsel, James Bell, hereby inform the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The following are its terms and conditions:

### Part 1: Guilty Plea and Charge(s)

**1.**      **Plea of Guilty:** The defendant petitions the Court for leave to enter and agrees to enter a plea of guilty to the following offenses charged in the Superseding Indictment:

**a.**      Count 1 which charges that the defendant committed the offense of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349.

**2.**      **Dismissal of Counts:**  Following imposition of sentence, the government will move to dismiss Counts 2 through 6 of the Superseding Indictment, without prejudice.  If the

defendant complies with all the terms of this Plea Agreement, then the Government will not seek to refile these charges.

3.        **Potential Maximum Penalties**:  The offense is punishable by a maximum sentence of 20 years' imprisonment, a $250,000 fine, and 3 years' supervised release following any term of imprisonment.

4.        **Elements of the Offense:**   To sustain the offense(s) to which the defendant is pleading guilty, the Government must prove the following elements beyond a reasonable doubt:

As to Count One, that the defendant knowingly conspired to devise and participate in a scheme or artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts as described in Count One of the Superseding Indictment;

Second, that the defendant did so knowingly and with intent to defraud; and

Third, that the defendant caused interstate wire communications to take place in furtherance of his scheme to defraud as described in Count One of the Superseding Indictment.

### Part 2:  General Provisions

5.        **Sentencing Court's Discretion Within Statutory Range:**  The defendant agrees and understands that: (A) the Court will use its discretion to fashion a sentence within the statutory range(s) set forth above; (B) the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range(s); (C) the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range(s); (D) the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature; (E) restitution may be imposed; (F) by pleading "Guilty" to more than one offense (Count), the Court

may order the sentences to be served consecutively one after another; (G) the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court; and (H) by pleading "Guilty," the Court may impose the same punishment as if the defendant had plead "Not Guilty," had stood trial and been convicted by a jury.

6. **Sentencing Court Not Bound by Guidelines or Recommendations:** The defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of the defendant's sentence is within the discretion of the Court. The defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to impose a sentence outside of the advisory sentencing guideline range for any reason, then the defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

7. **Plea Agreement Based on Information Presently Known:** The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the Government. The Government agrees not to bring other federal charges against the defendant based on information currently known to the United States Attorney for the Southern District of Indiana.

The Government will inform the Court and the defendant at the time of taking the defendant's plea whether the Government has obtained any information after the Plea Agreement was signed that may warrant  bringing other federal charges against the defendant.

8. **No Protection From Prosecution for Unknown or Subsequent Offenses:** The defendant acknowledges and agrees that nothing in this agreement shall protect the defendant in

any way from prosecution for any offense not specifically covered by this agreement, or not known to the United States Attorney for the Southern District of Indiana at this time.  The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

9.      **Rights Under Rule 11(b), Fed. R. Crim. P.:**  The defendant understands that the Government has the right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath during the guilty plea colloquy.  The defendant also understands that the defendant has the right: (A) to plead not guilty, or having already so pleaded, the right to persist in that plea; (B) to a jury trial; (C) to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.  The defendant also understands that the Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge(s), the right to appeal the conviction on such charge(s) to a higher court.  The defendant understands that if the Court accepts this plea of guilty, the defendant waives all of these rights.

### Part 3:  Sentence of Imprisonment

10.      **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):**  The parties have **not** agreed upon a specific sentence.  The parties reserve the right to present evidence and arguments concerning what they believe to be the appropriate sentence in this matter.

---

[1]Title 18, U.S.C. " 3141-3156, Release and Detention Pending Judicial Proceedings.

a.      **Government's Recommendation:**   The Government has agreed to recommend a sentence at the low end of the applicable Sentencing Guidelines Range as calculated by the Court during the sentencing hearing, provided that the defendant (i) continues to fully accept responsibility for the offense, (ii) does not commit a new criminal offense before the date of any sentencing, and (iii) does not otherwise violate the terms of any pre-trial release before the date of sentencing.

b.      **Defendant's Recommendation:**   The defendant understands that he is free to recommend any sentence including a sentence of no imprisonment.

11.     **Placement:**   The defendant reserves the right to request that this Court recommend to the Federal Bureau of Prisons that the defendant serve any sentence of imprisonment imposed in this case at an institution identified at the time of sentencing.  The defendant acknowledges and understands that any recommendation by the Court is only a recommendation and does not bind the Federal Bureau of Prisons.  The Government does not object to the defendant's requested recommendation.

12.     **Supervised Release:**   Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a term of supervised release to follow any term of imprisonment in this case, the duration of any term of supervised release, and the terms and conditions of the release.

13.     **Conditions of Supervised Release:**   The parties understand and agree that the Court will determine which standard and special conditions of supervised release to apply in this case.  The parties reserve the right to present evidence and arguments concerning these conditions.

**Part 4: Monetary Provisions and Forfeiture**

14.     **Mandatory Special Assessment:**   The defendant will pay a total of $100 assessment on the date of sentencing or as ordered by the Court to the Clerk, United States District Court, which amount represents the mandatory special assessment fee imposed pursuant to 18 U.S.C. § 3013.

15.     **Fine:** The United States will not recommend a fine be imposed.

16.     **Restitution:** The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether counts of the indictment/ information dealing with such losses will be dismissed as part of this plea agreement.  Pursuant to Title 18, United States Code, Section 3663(a)(3), the United States agrees to seek restitution from the defendant in an amount not to exceed $178,149, which the United States calculated by apportioning fault to the defendant by percentage as follows:

- 25% of the fault associated with the demolitions at MSD for a total of $20,500);
- 33% for the work FBD received as a result of the Bowen contract before July 17, 2017 for a total of $25,940;
- 33% for the amount FBD charged MSD for the dumpsters used by FBD ($9,210); and
- 50% of the amount of the flea market purchased by MSD ($122,500).

The parties have not reached an agreement as to restitution. The defendant reserves the right to make arguments and present evidence regarding restitution. The defendant understands and agrees that the final determination concerning the total amount of restitution owed and how restitution is apportioned will be made by the Court at sentencing.  The defendant further understands that if the Court decides to impose a restitution amount that is higher or lower than any recommendation of either party, or determines that a different apportion of fault is attributable to the defendant for any reason, then the defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

The defendant agrees that, while the District Court sets the payment schedule, this schedule may be exceeded if and when the defendant's financial circumstances change. In that event, and consistent with its statutory obligations, the Government may take any and all actions necessary to collect the maximum amount of restitution in the most expeditious manner available.

17. **Obligation to Pay Financial Component of Sentence**: If the defendant is unable to pay any financial component of the defendant's sentence on the date of sentencing, then the defendant agrees that the payment of the financial component should be a condition of supervised release. The defendant has a continuing obligation to pay the financial component of the sentence. The defendant further agrees that as of the date of filing this Plea Agreement the defendant will provide all requested financial information, including privacy waivers, consents, and releases requested by the Government to access records to verify the defendant's financial disclosures, to the Government for use in the collection of any fines, restitution, and money judgments imposed by the Court and authorizes the Government to obtain credit reports relating to the defendant for use in the collection of any fines and restitution, and money judgments imposed by the Court. The defendant also authorizes the Government to inspect and copy all financial documents and information held by the United States Probation Office. If the defendant is ever incarcerated in connection with this case, the defendant may participate in the Bureau of Prisons Inmate Financial Responsibility Program.

18. **Forfeiture**: The defendant admits that the payments Neal and others received from Muncie Sanitary District (as part of the charged conspiracy and as calculated by the Court at sentencing), and items purchased using those payments property is contraband, was used to facilitate, or constitutes the fruits of the commission of the offense(s) to which the defendant is pleading guilty, and, therefore, is subject to forfeiture to the United States. The defendant

abandons all right, title, and interest the defendant may have in the property so that proper disposition, including destruction, may be made thereof by federal, state, or local law enforcement agencies involved in the investigation of the defendant's criminal activity, without further notice or obligation whatsoever owing to the defendant.  The defendant further agrees not to contest any forfeiture action brought against and consents to the forfeiture of any of the property, whether any such forfeiture action is administrative, judicial, civil, or criminal, and agrees not to contest any use or destruction of any of the property listed below by any federal, state, or local law enforcement agency.  If any of the forfeitable property described above, as a result of any act or omission by defendant:

    A.  cannot be located upon the exercise of due diligence;

    B.  has been transferred or sold to, or deposited with, a third party;

    C.  has been placed beyond the jurisdiction of the court;

    D.  has been substantially diminished in value; or

    E.  has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).  The defendant consents to the entry of orders of forfeiture for such property and waives the requirements of Rules 32.2 and 43(a), Fed. R. Crim. P., regarding notice of the forfeiture in the charging document, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court

to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

F.  The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

The parties agree that any forfeiture order shall be consistent with any restitution ordered against the defendant and that the defendant's full payment of the restitution ordered in this case shall discharge the defendant's forfeiture obligations.

### Part 5:  Factual Basis for Guilty Plea

**19.**    The parties stipulate and agree that the following facts establish a factual basis for the defendant's plea of guilty to the offense set forth in Paragraph One, above, and that the Government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to trial.   The following information is only a summary of the Government's evidence. This Plea Agreement is not intended to foreclose the presentation of additional evidence and the Government and the Defendant reserve the right to present additional evidence at the time of sentencing.

Defendant JESS NEAL ("NEAL") was a Sergeant in the Muncie Police Department, and a resident of the Southern District of Indiana.

Defendant Tony Franklin ("Franklin") was the owner of Franklin Building and Design, LLC ("Franklin Building"), in Muncie, Indiana, and was a resident of the Southern District of

Indiana. Franklin Building performed demolition and general construction work for MSD and maintained a business bank account at JP Morgan Chase & Company.

Defendant Debra Nicole Grigsby ("Grigsby") was the District Administrator of the Muncie Sanitary District ("MSD"), and a resident of the Southern District of Indiana. She was appointed to the position in 2014. As the District Administrator for MSD, Grigsby was jointly responsible with others for approving the selection of contractors to perform work on MSD Infrastructure Projects. She also signed quotes for, or amendments to, construction-related contracts on MSD's behalf.

Defendant Phil Nichols ("Nichols") served as the Chairman for a political party in Delaware County ("the political party") from approximately 1990 through approximately 1998. Though Nichols had no official position or title within the political party after approximately 1998, Nichols maintained a private office at the political party's headquarters and continued to exert influence and control over multiple official acts performed by certain Muncie public officials.

Individual A was a supervisor at MSD, and Grigsby's spouse. Individual B was a Board member for the Muncie Sanitary District Board ("MSDB"). He was appointed to the position in 2014. Individual B was responsible, in the same manner as any Board member, for approving the quotes from demolition contractors who had been selected and awarded MSD work by Grigsby and Tracy Barton.

Franklin Building, owned by Franklin, performed demolition and general construction work for MSD, for which MSD paid Franklin Building in the manner described herein.

The City of Muncie ("Muncie") was a unit of local government, and a political subdivision of the State of Indiana. Muncie was located in the Southern District of Indiana. The functions and services provided by Muncie were coordinated through various agencies and departments. MSD

was a special unit of government created under Indiana State Law by a Muncie ordinance adopted in 1968.  MSD was located in the Southern District of Indiana.  Muncie/MSD maintained a business bank account at First Merchants Bank Corp. ("Muncie's City Account").

Residents and businesses living and operating in Muncie paid MSD for its services such as recycling, sanitation, sewer maintenance, storm water management, and utilities.  Those payments were deposited into Muncie/MSD's business bank account.  Payments to contractors who performed work on public works projects were drawn from MSD/Muncie's bank account.

The Muncie Sanitary District Board ("MSDB") was a three-member board whose responsibilities included approving or disapproving claims reports from MSD's employees seeking authorization to pay contractors hired to do work for MSD. Grigsby reported to the MSDB.

Beginning in or about 2014, MSD began a series of public works projects to improve Muncie's Sewer, Sanitary, and Flood Control Systems (the "MSD Infrastructure Projects").  MSD was also responsible for maintaining the Muncie sewer and storm water, and levee systems, and in some cases awarded contracts to private companies to repair, maintain, or mow those systems.

During the period of the conspiracy, MSD awarded work for the MSD Infrastructure Projects by soliciting bids or quotes from contractors. MSD employees, such as Grigsby, were required to solicit quotes from contractors who wished to perform work for MSD.  Grigsby had been instructed to select contractors based upon various criteria, primarily focused on the lowest priced local contractor who was qualified to perform the work required.  According to Indiana law, if the work was anticipated to cost less than $25,000, MSD could solicit bids directly from three (3) contractors to do the work with the intent of the statute and public bidding law being that the work would be awarded by MSD to the lowest responsive and responsible bidding contractor. After MSD awarded work to a contractor, the contractor's invoice would be processed by MSD

staff, and then submitted to the Office of the City Controller to the City of Muncie, who in turn presented a "claims report" to the MSDB seeking authorization to pay the contractor for the work. After the MSDB approved the claims report, MSD employees were authorized to pay contractors via checks drawn from Muncie's City Account.

NEAL acknowledges that checks drawn from Muncie's City Account and deposited into the business bank accounts of Franklin Building were processed through the Federal Reserve Bank Check Processing Centers located in Cincinnati, Ohio, or Chicago, Illinois, and traveled in interstate commerce. NEAL further acknowledges that checks deposited into First Merchants Bank in Muncie, Indiana, were uploaded through a facility of interstate commerce to a server located in Florida. First Merchants Bank was insured by the Federal Deposit Insurance Corporation. The internet is a facility of interstate commerce.

### The Scheme to Defraud MSD

Beginning in or about November, 2015, NEAL, Franklin, Nichols, Grigsby, and others, devised, intended to devise, and participated in a scheme or artifice to defraud MSD, and to obtain money and property of MSD by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts made by MSD employees to the MSDB, in exchange for cash bribes and kickbacks intended to cause a political party to cause work to be awarded to Franklin Building by corrupting the bidding process and to cause the clearing of checks drawn on the Muncie City Account to be deposited into Franklin Building's business bank accounts ("the Scheme"), through the following means and methods:

The Scheme was an illegal agreement by NEAL, Franklin, Nichols, and Grigsby, to defraud the MSDB and MSD by purchasing the influence of a political party to cause work to be awarded to Franklin Building and to cause the MSDB to approve fraudulent claims reports based upon

fraudulent bids to MSD which in turn caused the clearing of checks drawn on the Muncie City Account and deposited into Franklin Building's business bank accounts.

The claims reports presented to the MSDB were fraudulent because Grigsby and others concealed the coconspirators, Nichols', and Grigsby's, illegal agreement to accept bribes and kickbacks  from Franklin to cause the political party to illegally influence the MSDB to award work to Franklin.

As a result of the Scheme, the MSDB approved the clearing of checks drawn on Muncie's City Account to pay the invoices submitted to MSD by Franklin Building for work on MSD projects that were required to be awarded to the lowest bidder but which Franklin Building procured through fraud by the purchase of the influence of the political party.

## Means and Methods of the Scheme to Defraud MSD

It was part of the Scheme that NEAL, Nichols, Grigsby, and Franklin participated in a criminal conspiracy to steer MSD public works contracts to Franklin by corrupt manipulation of MSD's bidding process, in exchange for cash bribes and kickbacks to Grigsby and the political party or members of the political party.

During the time period in which Franklin Building began to work on the Howard Street projects, MSD stopped awarding demolition contracts to Franklin Building because the political party determined that Franklin was not a member or supporter of the party, and because Franklin had not made any cash payments to the party.  NEAL approached Grigsby at Muncie City Hall, and asked Grigsby why Franklin Building had not been awarded additional demolition contracts arising out of MSD Infrastructure Projects.  Grigsby then told NEAL that Nichols had ordered Grigsby and Tracy Barton to discontinue awarding contracts to Franklin Building for the reasons previously described.

In or about early November 2015, NEAL gave Grigsby an envelope that contained cash. NEAL told Grigsby to give the envelope to Nichols, told Grigsby the cash was from Franklin, and instructed Grigsby to tell Nichols that it was from Franklin, and to tell Nichols to use it for political purposes. The cash in the envelope belonged to Franklin. Franklin had full knowledge that NEAL intended to use the cash to give it to Nichols via Grigsby with the intention of obtaining work from the MSD for Franklin. Grigsby delivered the cash from Franklin through NEAL to Nichols at Nichols' office in the political party's headquarters. NEAL admits that the cash was intended to induce Nichols to influence the MSDB, through Grigsby, to award Franklin Building more MSD work.

Nichols and Grigsby accepted the cash bribe to the political party, which the party then used for its own expenditures or expenditures on behalf of candidates or members of the party. NEAL admits that Nichols used his influence and control within the political party to direct the performance of official acts by Grigsby within MSD, namely, her decisions to manipulate the bidding process at MSD in order to fraudulently award MSD public works projects to Franklin Building in exchange for the payment of a cash bribe and/or kickbacks to Grigsby and Nichols.

As set forth in more detail below, NEAL admits that Grigsby abused her position of public trust and conspired with NEAL, Nichols, and Franklin to manipulate the MSD bidding process for work arising out of MSD Infrastructure Projects in order to make Franklin Building's bid appear to be the lowest bids, and thus to award contracts to Franklin Building in exchange for Nichols and Grigsby receiving a bribe from Franklin, through NEAL.   Nichols accepted the bribe at Nichols' office in the political party's headquarters from Franklin, through Grigsby and NEAL at NEAL's direction.

After NEAL, through Grigsby, paid Nichols the bribe, Franklin Building was awarded

more work from MSD. In order to be awarded that work, Franklin submitted quotes to MSD for Franklin Building to demolish four additional homes arising out of the MSD Infrastructure Projects. Grigsby then fraudulently caused the work for those quotes to be awarded to Franklin Building by corrupting the bidding process by obtaining for each quote two false and fraudulent bids in amounts higher than the quotes so that it appeared Franklin was the lowest bidder.

As a result of the Scheme to rig the bids received by MSD, Franklin, Nichols, Grigsby, NEAL caused MSD to award demolition contracts arising out of the MSD Infrastructure Projects to Franklin Building in exchange for something of value, i.e., a bribe in the form of a cash payment:

| Contractor | Number of Bids | Number of Awards | Value of Awards |
|---|---|---|---|
| Franklin Building and Design, LLC | 4 | 4 | $76,400 |
| Total | | | **$76,400** |

As a result of said scheme to defraud, beginning in or about November 2015, in the Southern District of Indiana, Indianapolis Division, and elsewhere, NEAL, and others, did knowingly and intentionally conspire and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, by devising a scheme or artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, or promises, specifically by transmitting or causing to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, namely, a clearing of checks drawn on the Muncie City Account, and deposited into the business bank accounts of Franklin Building.

**Part 6:  Other Conditions**

15

20.     **Background Information:**  The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence.  The defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

21.     **Good Behavior Requirement:**  The defendant agrees to fully comply with all conditions of release imposed by the Court during all stages of this case.  If the defendant fails to fully comply with such conditions, then the Government may withdraw from this Agreement.

22.     **Compliance with Federal and State Laws:**  The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

### Part 7:  Sentencing Guideline Stipulations

23.     **Guideline Computations:**  The parties reserve the right to present evidence and argument concerning the appropriate advisory Sentencing Guideline range for these offenses.  The parties have discussed this computation but have not agreed upon the advisory calculation.  They agree that the Court will make this determination.  Additionally, the parties agree that the information contained within the Stipulated Factual Basis does not prevent either party from making arguments regarding the loss attributable to the defendant for Sentencing Guideline purposes.

It is the Government's position that the reasonably foreseeable pecuniary harm to MSD that the defendant knew, or under the circumstances, reasonably should have known was a potential result of the offense was $1,565,767.90.

The parties have not reached an agreement as to loss. The defendant acknowledges that he is free to argue that a different loss calculation applies.

a.      **Acceptance of Responsibility:**   To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct.  Based upon the defendant's willingness to accept a Plea Agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant  satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing.  The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently.  After the Defendant enters a plea of guilty, the Government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level.  The parties reserve the right to present evidence and arguments concerning the defendant's acceptance of responsibility at the time of sentencing.

### Part 8:  Waiver of Right to Appeal

24.      **Direct Appeal:**  The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined.  Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant expressly waives the defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742.  The defendant further expressly waives any and all challenges to the statute(s) to which the defendant is pleading guilty on constitutional grounds, as well as any challenge that the defendant's admitted conduct does not fall within the scope of the applicable statute(s).  The

defendant further agrees that in the event the Court sentences the defendant to sentence within or below the applicable Sentencing Guidelines as calculated by the Court at sentencing, and regardless of the defendant's criminal history category or how the sentence is calculated by the Court, then the defendant expressly waives the defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This blanket waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions supervised release and the amount of any fine.

25.   **Later Legal Challenges:**   Additionally, the defendant expressly agrees not to contest, or seek to modify, the defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255. As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the defendant's offense(s) and explicitly make such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the defendant from filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment.   However, if the defendant files such a motion, the Government may oppose the motion on any other grounds.   Furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a motion, the Government may claim that this waiver bars such an appeal.   As concerns the Section 2255 waiver, the waiver does not prevent claims, either on direct or collateral review, that the defendant received ineffective assistance of counsel.

The Government further agrees that it will not assert this waiver as a bar to the defendant seeking a "compassionate release" sentence reduction pursuant to the First Step Act of 2018 and

18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons" established by the defendant and consistent with U.S.S.G. § 1B1.13 application note 1(A) & (C) (or, in the event of amendment of those U.S.S.G. provisions, the provisions, if any, with the same effect at the time of the filing of the motion for sentence reduction). However, the defendant waives any right to file more than one motion on the same basis. Furthermore, if the defendant files more than one motion, the Government reserves the right to assert this waiver as a bar to an appeal from the District Court's decision regarding that motion. The government further reserves the right to oppose any motion for compassionate release on any other grounds.

26. **No Appeal of Supervised Release Term and Conditions**:  The parties' reservation of the rights to present evidence and arguments in this Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified above, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

### Part 9:  Presentence Investigation Report

27. The defendant requests and consents to the commencement of a presentence investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

28. The defendant further requests and consents to the review of the defendant's Presentence Investigation Report by a Judge, defendant's counsel, the defendant, and the Government at any time, including prior to entry of a formal plea of guilty.

### Part 10:  Immigration Consequences

29. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under

federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. The defendant also recognizes that removal will not occur until service of any sentence imposed in this case has been completed. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the conviction in this case on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is the defendant's removal from the United States.

### Part 11:  Statement of the Defendant

**30.** By signing this document, the defendant acknowledges the following:

**a.** I have received a copy of the Superseding Indictment and have read and discussed it with my attorney. I believe and feel that I understand every accusation made against me in this case. I wish the Court to omit and consider as waived by me all readings of the Superseding Indictment/Information in open Court, and all further proceedings including my arraignment.

**b.** I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the Indictment, and believe and feel that my attorney is fully informed as to all such matters. My attorney has since informed, counseled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.

**c.** I have read the entire Plea Agreement and discussed it with my attorney.

**d.** I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

e.      Except for the provisions of the Plea Agreement, no officer or agent of any branch of Government (federal, state or local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead "Guilty." I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading "Guilty" I have saved the Government and the Court the expense and inconvenience of a trial. I understand that before it imposes sentence, the Court will address me personally and ask me if I wish to make a statement on my behalf and to present any information in mitigation of punishment.

f.      I am fully satisfied with my attorney's representation during all phases of this case. My attorney has done all that anyone could do to counsel and assist me and that I fully understand the proceedings in this case against me.

g.      I make no claim of innocence, and I am freely and voluntarily pleading guilty in this case.

h.      I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea.

i.      I understand that if convicted, a defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

j.      My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within fourteen (14) days of the entry of the judgment in this case; I further understand

that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

**k.** My attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation office, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two-level increase in the offense level.

**l.** If this cause is currently set for trial on the Court's calendar, I request that this date be continued to permit the Court to consider this proposed guilty Plea Agreement. I further understand that any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects my guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G).

## Part 12:  Certificate of Counsel

**31.** By signing this document, the defendant's attorney and counselor certifies as follows:

**a.** I have read and fully explained to the defendant all the accusations against the Defendant which are set forth in the Indictment in this case;

**b.** To the best of my knowledge and belief each statement set forth in the foregoing petition to enter plea of guilty and Plea Agreement is in all respects accurate and true;

**c.** The plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement accords with my understanding of the facts as related to me by the defendant and is consistent with my advice to the defendant;

22

     **d.**     In my opinion, the defendant's waiver of all reading of the Indictment in open Court, and in all further proceedings, including arraignment as provided in Rule 10, Fed. R. Crim. P., is voluntarily and understandingly made; and I recommend to the Court that the waiver be accepted by the Court;

     **e.**     In my opinion, the plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement is voluntarily and understandingly made and I recommend to the Court that the plea of "Guilty" be now accepted and entered on behalf of the defendant as requested in the foregoing petition to enter plea of guilty and Plea Agreement.

## Part 13:  Final Provision

32.    **Complete Agreement:**  The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty.  This document is the complete and only Plea Agreement between the defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the Plea Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOHN E. CHILDRESS
Acting United States Attorney

6/2/21
DATE

Tiffany J. Preston
Assistant United States Attorney

6/21/2021
DATE

Nicholas J. Linder
Deputy Chief, Criminal Division

6-17-21
DATE

Jess Neal
Defendant

6/17/21
DATE

James Bell
Counsel for Defendant

JUNE 17, 2021
DATE

Scott Shockley
Counsel for Defendant

24